*UNITED STATES DISTRICT COURT*
*DISTRICT OF MASSACHUSETTS*

| | |
|---|---|
| STEVEN A. HALL,<br><br>      Plaintiff,<br><br>vs.<br><br>MEADWESTVACO CORPORATION,<br><br>      Defendant. | CIVIL ACTION NO. 03-30310-KPN |

## JOINT PRE-TRIAL MEMORANDUM

I. CONCISE STATEMENT OF THE EVIDENCE

Plaintiff's Statement:

In June 2002, the plaintiff, Steven Hall, 44 years of age, was a 23 year employee of the defendant MeadWestvaco Corporation. On June 21, 2002, he sustained severe personal injuries from a motorcycle accident (not work related), including a ruptured spleen and fracture of the left clavicle.

Steven Hall was an eligible employee entitled to leave under the Family Medical Leave Act (29 U.S.C. 2611 et seq.). The appropriate documentation was completed and on June 24, 2002, MeadWestvaco determined that Mr. Hall did sustain a serious health condition that made him unable to perform the functions of his job and that he was eligible for leave under the Family Medical Leave Act for a period of 12 weeks. Leave was granted as of June 25, 2002.

Sometime in late July or early August 2002, the employer questioned whether or not Mr. Hall could return to work part-time. On or about August 2, 2002, Steven Hall's physician forwarded a Disability Certification to the employer

indicating that Mr. Hall was totally disabled through September 9, 2002, from any work at MeadWestvaco.

On or about August 5, 2002, the employer forwarded a medical certification form to Mr. Hall's physician notifying him of MeadWestvaco's Transitional Duty Program and asked the physician if Steven Hall was a candidate for part-time work with restrictions.

Mr. Hall's physician returned the Medical Certification for Transitional Duty Assignment form to the employer indicating no work until September 9, 2002, indicating that the significant trauma Mr. Hall sustained in the accident resulted in splenic rupture with significant residual abdominal clotting that may result in rebleeding.  The doctor indicated on the form that he would not allow any activity demanding scheduled hours of attention.

On September 4, 2002, Mr. Hall's physician forwarded another Disability Certification to his employer, allowing him to return to work without restriction on September 9, 2002.  On September 5, 2002, a physician on behalf of MeadWestvaco also cleared Mr. Hall to return to work without restriction.

On September 8, 2002, the day before Mr. Hall was scheduled to return to work, he received a telephone call from Christopher Matthews, the superintendent of the mill, during which he told the plaintiff not to return to work the next day, stating that there were "inconsistencies" with his disability.  Mr. Hall was terminated on or about September 12, 2002, in violation of the Family Medical Leave Act.

The Family Medical Leave Act provides that in any case in which the employer has reason to doubt the validity of the Medical Certification from the employee's physician, the employer may have the employee examined by a physician of the employer's choosing.  If there is conflicting medical opinion, the Act provides for a binding third medical opinion.  The Act further requires that any employee who properly takes leave shall be entitled on return from said leave to be restored by the employer to the position of employment held by the employee when the leave commenced.

The termination of Mr. Hall prior to his reinstatement was a prohibited act under the statute and he is entitled to his lost wages, salary, benefits, (estimated at approximately $220,000.00) with interest, plus an additional amount of liquidated damages in the same amount, plus attorney fees.

Defendant's Statement:

Defendant's evidence will show that its leave policies exceed those required by the FMLA, at least as it relates to individuals out of work due to their own disabilities/serious medical conditions.  Thus, whereas the FMLA provides the employee with 12 weeks *unpaid* leave for various reasons, including the employee's serious health condition, the employer's longstanding policies provide a totally disabled employee *paid* leave and job protections, for mill employees, that last for up to a year.

It is undisputed that Plaintiff suffered injuries in June of 2002 from a motorcycle injury and that for a period of time, he was totally disabled.  He completed the appropriate paperwork indicating that he was totally disabled, and

he received disability pay.  He also completed the requisite paperwork under the FMLA.

Plaintiff worked as a beater engineer for Defendant, which operates a paper mill.  It is the lightest duty job in the mill; as the beater engineer's primary responsibility is to examine a piece of paper or "plate" (weighing about 8 ounces) to assess whether its color is correct, and order appropriate changes if necessary.  Because of the skilled nature of the beater engineer position, and extended time that it takes an individual to become competent in such a position, during Plaintiff's absence, the remaining beater engineers were required to work twelve hour shifts to cover for Plaintiff's absence.

It is also undisputed that Plaintiff worked a second job as a fireman, for which he received a stipend for each call to which he responded.  In late July 2002, a photograph appeared in the local newspaper showing Plaintiff at a local accident scene.  The photograph was posted at the mill, presumably by a displeased co-worker.  When Plaintiff came to discuss his displeasure regarding the photograph, the mill superintendent, cognizant of the strain Plaintiff's absence was having on the remaining beater engineers, informed Plaintiff that the Company, if at all possible, wanted to make it possible for him to use his color matching expertise to relieve the strain on his co-workers.  Plaintiff was encouraged to return to perform color matching responsibilities, services to the extent able, even on a part-time basis for a few hours a day.  He was informed that the Company could guaranty that he would not have to lift anything contrary to any medical restrictions; that he would not have to rotate shifts, and that he

could sit or stand or walk-around as much as necessary.  Plaintiff did not share this information with his treating physician.  Nor did he return.  Rather, he in effect told the manager that it would be foolish economically for him to return to work with adjusted duties, in part, because his wife had agreed to reduce child support payments.  He continued to receive disability pay based on a claim that he was totally disabled.

Following additional reports that Plaintiff was performing duties inconsistent with his claimed inability to perform the limited, part-time duties being requested, the Company hired an investigator to engage in surveillance.  In the beginning of August, a tape was received that, while showing Plaintiff moving around freely, did not demonstrate Plaintiff doing anything inconsistent with a claim of total disability, and no action was taken.  However, following additional reports that he was engaging in such activities, a second surveillance showed him performing activities for his second employer that included carrying equipment that weighed between fifteen and twenty pounds, while refusing to perform the very much easier tasks of a color beater even on a part-time basis.

The Company concluded that while he may have been entitled to FMLA leave for having a serious medical condition, in light of his activities on behalf of his second employer, he clearly was not incapable of doing the light duty work that had been offered.  He was not, therefore, totally disabled and he had been fraudulently receiving disability *pay* while refusing to perform work he could have performed.  He was, as a result, discharged.

II.  STIPULATION OF UNCONTESTED FACTS

1. On June 21, 2002, Steven Hall sustained a serious health condition and, for some period of time, was unable to perform the functions of his job at MeadWestvaco.

2. On or about June 24, 2002, MeadWestvaco found Steven Hall to be eligible for leave under the Family Medical Leave Act and he was placed on unpaid FMLA leave effective June 25, 2002, which leave was up to twelve weeks.

3. Mr. Hall also began to receive disability pay.

4. In late July and/or August 2002, Christopher Matthews and/or Susan Bergendahl, employees of MeadWestvaco, believed that Mr. Hall was able to perform at least some of his job duties for the Company on a limited basis, and informed Mr. Hall that he could return to work on a limited part-time basis, and that the Company would adjust his duties, if necessary.

5. At the time MeadWestvaco did not request a second medical opinion, pursuant to 29 U.S.C. 2613(c), but instead ordered surveillance of Steven Hall.

6. On or about September 4, 2002, Steven Hall's treating physician (Frederick Conforti, M.D.) notified MeadWestvaco that Steven Hall could return to work without restriction on or about September 9, 2002.

7. Steven Hall, after being accepted on leave pursuant to the Family Medical Leave Act, was not allowed by MeadWestvaco to return to employment at MeadWestvaco.

III.  Contested Issues of Fact

    1) Whether the Company discharged Plaintiff for lawful reasons notwithstanding the fact that he was on FMLA leave.

    2) Whether the Plaintiff mitigated his damages.

IV.  Jurisdictional Questions

None anticipated.

V.  Questions Raised by Pending Motions

The defendant has filed a Motion in Limine To Preclude Testimony Regarding Wages Lost Following Unconditional Offer of Reinstatement. Plaintiff intends to file his opposition to this Motion on or before March 16, 2005 pursuant to Procedural Order Re: Final Pretrial Conference/Trial dated January 25, 2005 (as amended).

The Plaintiff is filing herewith a Motion in Limine to Preclude the Defendant from Introducing Any Testimony and/or Evidence Disputing Plaintiff's Physician's Medical Certification That He Was Unable to Perform the Functions of His Position from June 2002 Through September 9, 2002.

VI.  Issues of Law, Including Evidentiary Questions

<u>Defendant's stated issues: Liability</u>: Defendant does not contest that Plaintiff was entitled to 12 weeks of unpaid FMLA leave in the summer of 2002, due to a serious health condition. Of course, to be eligible for such unpaid FMLA leave the employee need not be totally disabled.

Defendant also recognizes that as a general rule an employee has a substantive entitlement to return to his prior position following an FMLA leave,

7

and that an employer that does not allow such a return may be liable for a violation under the FMLA, and that the employee need not demonstrate an unlawful intent to violate the FMLA to prevail on such a claim.  Hodgens v. Gen. Dynamics, Corp., 144 F.3d 151 (1st Cir. 1998).

However, contrary to the position seemingly taken by Plaintiff, it is clear that the right to reinstatement following an FMLA leave is not absolute.  *See, e.g.,* Kohls v. Beverly Enterprises Wisconsin, Inc., 259 F.3d 799 (7th Cir. 2001); Pharakhone v. Nissan North America, Inc., 324 F.3d 405 (6th Cir. 2003); Ogborn v. United Food and Commercial Workers Union, Local No. 881, 305 F.3d 763 (7th Cir. 2002); Hoge v. Honda of America Mfg., Inc., 384 F.3d 238 (6th Cir. 2004); Geromanos v. Columbia University, 322 F. Supp.2d 420 (S.D.N.Y. 2004); Bearley v. Friendly Ice Cream Corp., 322 F. Supp.2d 563 (M.D.Pa. 2004); Jennings v. Mid-American Energy Co., 282 F. Supp.2d 954 (S.D.Iowa Davenport. Div. 2003);Yashenko v. Harrah's NC Casino Company, LLC (W.D.N.C. 2005).

Thus, in a variety of circumstances, courts have found that an employee on FMLA leave did not have to be allowed to return, either because he was terminated for lawful reasons or because he was laid off.  *See, e.g.*, Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155 (2nd Cir. 1999); Hopkins v. Electronic Data Systems Corp., 1997 WL 853506, 5-6 (E.D.Mich. 1997); O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1354 (11th Cir. 2000); Dollar v. Shoney's, Inc., 981 F. Supp. 1417, 1419 (N.D.Ala. 1997).

"With no absolute right to reinstatement, whether an employer violates the FMLA turns on why the employee was not reinstated."  Bearley v. Friendly Ice

Cream Corporation, 322 F. Supp.2d 563 (M.D.Pa. 2004).  The employer here submits that it lawfully terminated Plaintiff, thereby denying him restoration.  Thus, it was learned that while Plaintiff was receiving disability pay based on a claim that he was totally disabled, and while Plaintiff was declining to perform even light duty, part-time work for the Company that he was clearly capable of doing, he was performing more strenuous duties for another employer.  Denial of restoration under such circumstances, even if the employee was entitled to an *unpaid* FMLA leave, simply is not unlawful.

An employer is, of course, generally entitled to discharge an at will-employee who improperly receives disability pay or abuses the employer's sick leave policies.  The fact that the leave qualifies as FMLA leave does not negate the employer's right to terminate the employee, in such circumstances where the employee is collecting money based on a claim of total disability when, it is clear, he could perform some services for the employer, just because the employee is also on FMLA leave.

In the instant case, the employer has a policy that exceeds the FMLA's 12 weeks of unpaid leave requirement by protecting a mill employee's job for a full year, with pay (in the nature of disability benefits), if the employee is "totally disabled."  Both case law, and common sense, permit a discharge of an employee who, in addition to being on *unpaid* FMLA leave, receives disability *pay* that he was not entitled to under an employer's more generous leave policy.

It is clear from the provisions of the FMLA itself that the FMLA should not be interpreted in a way that would discourage employers from providing pay to a

certain subgroup of those entitled to receive unpaid FMLA leave. Thus, in Ragsdale v. Wolverine Word Wide, Inc., 535 U.S. 81 (2002), the United States Supreme Court found the Department of Labor's FMLA regulations to be invalid, to the extent they indicated that, without express notice to an employee, an employer could not count time off taken by an employee under a company's medical leave policy as counting toward the twelve week entitlement. In doing so, the court relied, in large part, on the FMLA's desire to encourage employers to do more than provide twelve weeks of unpaid leave. Thus, the Court noted:

> A number of employers have adopted policies with terms far more generous than the statute requires. Congress encouraged as much, mandating in the Act's penultimate provision that "[n]othing in this Act ... shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements under this Act." § 2653. Some employers, like Wolverine, allow more than the 12-week annual minimum; others offer paid leave. U.S. DEPT. OF LABOR, D. CANTOR ET AL., BALANCING THE NEEDS OF FAMILIES AND EMPLOYERS: FAMILY AND MEDICAL LEAVE SURVEYS 5-10, 5-12 (2001) (22.9% of FMLA-covered establishments allow more than 12 weeks of leave per year; 62.7% provide paid disability leave). As long as these policies meet the Act's minimum requirements, leave taken may be counted toward the 12 weeks guaranteed by the FMLA. See, 60 Fed. Reg. 2230 (1995) ("[E]mployers may designate paid leave as FMLA leave and offset the maximum entitlements under the employer's more generous policies").

Any rule of law that would inhibit an employer from discharging employees who improperly receive *pay* for medical leave based on a claim of total disability would discourage employers from adopting such generous policies and would be contrary to the FMLA.

The employer here provides paid leave, for up to a year, but such paid medical leaves are not offered to every employee who is eligible for FMLA leave. Rather, such paid leave requires that the employee be totally disabled, which is

10

clearly a far different standard than is required to establish FMLA eligibility. Hodgens v. General Dynamics Corp., 144 F.3d 151, 165 (1st Cir. 1998) ("…it is not necessary that the medical condition make him "too sick to work" on a particular day in order for an absence on that day to be covered under the statute.")  Furthermore, under the FMLA, an employee is entitled to reject an offer of light duty work and remain on an unpaid leave of absence.  However, under the disability plan, if an employee fails to accept light duty work that is made available and he is capable of performing, he is not entitled to receive any pay.  Since employers are not precluded by the FMLA in providing such benefits, and are, in fact, encouraged to do so, they are also not precluded from taking actions against employees who they conclude have abused such paid leave policies.

     The FMLA's rules regarding a serious health condition govern unpaid leave (where the employee has a financial incentive to return that is dissipated by the receipt of pay); they do not negate an employers' right to establish requirements for the receipt of *payment* for medical leave; and they do not prevent employers from acting when they reasonably conclude that there has been an abuse of such generosity, since paid leave is not mandated by the law.  The Plaintiff would improperly seek to impose the FMLA's requirements pertinent to unpaid leave on an employer's right to provide paid leaves.  This he cannot do.

     It would, respectfully, be absurd to argue that an employer is precluded from terminating an employee who is receiving paid leave because he is totally disabled, when the evidence demonstrates that he is not.  Indeed, the employee

11

may be entitled to receive unpaid twelve weeks of leave under the FMLA. However, if he or she also *improperly* receives *pay* (and potentially extended leave) under a more generous policy extended by the employer, the Company may discharge the employee for such conduct and thereby deny the employee's restoration rights.

This was the precise holding of the Seventh Circuit Court in <u>Kariotis v. Navistrar, International</u>, 131 F.3d 672 (7th Cir. 1997). There, as here, when the Company suspected the employee of receiving disability pay improperly, it engaged in video surveillance and conducted an investigation that the court noted, "objectively speaking, left something to be desired." Nevertheless, its decision not to allow the Plaintiff to be restored to her prior position was found not to violate the FMLA. Addressing the FMLA claim specifically, the court noted:

> Unlike Kariotis' COBRA claim, Navistar need not conclusively prove that Kariotis had misused her leave; an honest suspicion will do. This is because the FMLA's regulations plainly state that an employee like Kariotis has "no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. § 825.216(a). In other words, because Navistar lawfully could have terminated Kariotis after suspecting she committed fraud while on duty, the company can discharge her after suspecting she committed fraud while on leave. If Navistar had to prove more than an honest suspicion simply because Kariotis was on leave, she would be better off (and enjoy "greater rights") than similarly situated employees (suspected of fraud) who are not on leave. The statute and the regulations rule out that inequity.

131 F. 3d 680-681. Other courts have reached similar conclusions when there is evidence that an employer's leave policy has been abused. <u>Lucy v. Jones</u>, 2004 WL 1745754 (N.D.Ill. 2004) (while on leave to care for son employee took position with another employer. "This was a fraud on [the employer]."); <u>Wesley v.</u>

One Price Clothing Stores, Inc., 2003 WL 21955861 (N.D. Tex. 2003) (no right to reinstatement when the company had honest belief that employee had not used leave for intended purpose.); Mosley v. Hedges, 1998 WL 182478 (N.D. Ill. 1998) (no violation of restoration rights when videotape led to employer's belief that there had been a "fraudulent use of sick leave benefits."); Moughari v. Publix Super Markets, Inc., 1998 WL 307454 (N.D. Fla. 1998) ("The undisputed evidence in the record establishes that Moore terminated Moughari because Moore--with good reason--concluded that Moughari was not using his leave time for its intended purpose, and was not being candid with his managers about his leave. Such termination did not constitute a violation of FMLA whether or not Moore's conclusion about Moughari's alleged improper use of leave time was correct, whether or not Moughari was on FMLA leave at the time, and whether or not Publix failed to properly advise Moughari about his FMLA rights."); Kohl's v. Beverly Enterprise of Wisconsin, Inc., 2000 WL 34230254 (W.D. Wis. 2000) (employer could be fired for matters discovered while on FMLA leave).

     As to damages, only actual damages are recoverable and are strictly defined and measured by actual monetary losses. 29 U.S.C. § 2617(a)(1)(A)(i)-(iii). Nevada Dept. of Human Resources v. Hibbs, 538 U.S. 721, 740 (2003). The appropriateness of reinstatement or the less favored front pay is generally for the court to decide. Lussier v. Runyon, 50 F.3d 1103, 1108-09 (1st Cir. 1995). Front pay should not be awarded unless reinstatement is impracticable or impossible. Wildman v. Lerner Stores Corp., 771 F.2d 605, 616 (1st Cir. 1985). Even then, awards of front pay are discretionary, in part because they

necessarily involve predictions of events yet to come." Johnson v. Spencer Press of Maine, 364 F.3d 368, 380 (1st Cir. 2004).

However, for the reasons cited in its Motion in Limine, Defendant submits that Plaintiff's declining of a *bona fide* offer to return to his prior position precludes any liability from that time forward, and effectively moots any issue of front-pay or reinstatement. While the decision to continue to pursue a career as an electrician may be understandable, it clearly is not a special circumstance that could justify requiring Defendant to pay the difference between what he is earning and what he would be earning if he had returned to work for Defendant. Ford Motor Co. v. EEOC, 458 U.S. 219, 231-32 (1982); Costa v. Markey, 706 F.2d 1, 7 (1st Cir. 1982); Hogan v. Bangor and Aroostook R. Co., 61 F.3d 1034, 1038 (1st Cir. 1995) ("[a]n employee's rejection of an employer's unconditional job offer does end the accrual of the employer's potential back pay liability, absent special circumstances.").

It is anticipated that there will be issues relating to mitigation of damages prior to the unconditional offer to return to work. *See, generally*, Johnson v. Spencer Press of Maine, 364 F.2d 368, 379, 380 (1st Cir. 2004).

The question of liquidated damages is also left to the discretion of the court. Putative liquidated damages may be reduced or eliminated altogether if the court finds that the employer acted in good faith and had reasonable grounds for taking the action that constituted the violation of the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii).

Plaintiff's Position:

Plaintiff disputes defendant's interpretation of FMLA as set forth above as circuitous and simply not the law in this jurisdiction. Defendant's argument is based on law peculiar to the Seventh Circuit that allows employers to remain purposefully ignorant of the truth and still avoid liability under statutes intended to prevent employment discrimination based upon the employers' so called 'honest belief' that the employee is not disabled. Kariotis v. Navistar Int'l Transport Corp., 131 F.3d 672 (7th Cir. 1997). For good reason this rule has been rejected by other courts. *See*, Smith v. Chrysler Corp., 155 F.3d 799, 806 (6th Cir. 1998) ("The Seventh Circuit, however, apparently does not require an employer to demonstrate that its belief was reasonably grounded on particularized facts that were before it at the time of the employment action. Instead, for the rule to apply, the employer need only provide an honest reason for firing the employee, even if that reason had no factual support. . . . We find such an abstract application of the rule to be at odds with the underlying purpose behind the [Americans with Disabilities] Act--*i.e.,* that employment actions taken regarding an individual with a disability be grounded on fact and not on unfounded fear, prejudice, ignorance, or mythologies. To the extent the Seventh Circuit's application of the "honest belief" rule credits an employer's belief without requiring that it be reasonably based on particularized facts rather than on ignorance and mythology, we reject its approach.) (citations omitted). Indeed to allow the

15

defendant to argue that the employer was permitted to terminate the plaintiff based upon a supervisor's subjective doubts about the extent of plaintiff's disability would make the provisions of 29 U.S.C. 2613(c), providing the employer with a mechanism for obtaining second and third medical opinions, completely superfluous.  The plaintiff reserves the right to supplement this response.

VII.     Requested Amendments to Pleadings

None anticipated.

VIII.    Additional Matters to Aid in Disposition of the Case.

In preparing for trial, plaintiff now believes that he is entitled to Judgment on liability as a matter of law, and respectfully requests the Court consider allowing time for the filing of such Motion.

IX.     Probable Length of Trial

Three days.  Plaintiff would consider non-jury.

X.      List of Names and Addresses of Witnesses Who Will Testify at Trial and Purpose of Testimony.

Plaintiff

Steven Hall, 10 Chestnut Ridge, Housatonic, MA – Plaintiff

Susanne Beugeudahl, 51 Bartlett Avenue, Pittsfield, MA -- Human Resources Generalist for MeadWestvaco.

Susan Stevens, 40 Willow Street, South Lee, MA -- Vice President of Human Resources for MeadWestvaco.

Christopher Matthews, 733 North Street, Windsor, MA -- Manager of New Business Development for MeadWestvaco.

It is expected that these MeadWestvaco employees will testify to the central issues in the case involving the process and decision to accept

Steven Hall's request for Family Medical Leave and his termination from MeadWestvaco before he was reinstated to work at MeadWestvaco.

Seth Wheeler, Roma-Wheeler Investigations, Springfield, MA.  It is expected Mr. Wheeler would testify to the surveillance he performed for MeadWestvaco on Steven Hall.

Frederick Conforti, M.D., Great Barrington, MA.  It is expected Dr. Conforti will testify to his medical treatment of Steven Hall as well as the medical certifications he provided to MeadWestvaco and his reasons for not allowing him to return to work at MeadWestvaco until September 9, 2002.

Defendant

The defendant does not intend to call any witnesses that are not listed above, but reserves the right to call any if not called by Plaintiff and/or to call any rebuttal witnesses.

XI.   Proposed Exhibits.

| | |
|---|---|
| Exhibit 1 | Letter dated June 24, 2002 from MeadWestvaco to Steven Hall with two page Response to Associate Request for Family Medical Leave dated June 24, 2002.<br>(Exhibit one of Susanne Bergendahl deposition – 3 pages.) |
| Exhibit 2 | Certification of Health Care Provider (undated)<br>(Exhibit two of Susanne Bergendahl deposition – 3 pages) |
| Exhibit 3 | Letter dated August 5, 2002 from MeadWestvaco to Dr. Conforti regarding Transitional Duty Program (Exhibit three of Susanne Bergendahl deposition – 1 page) |
| Exhibit 4 | Disability Certification from Frederick Conforti, M.D. dated August 2, 2002<br>(Exhibit one of Steven Hall deposition – 1 page) |
| Exhibit 5 | Medical Certification for Transitional Duty Assignment form completed by Frederick Conforti, M.D. (undated) – 1 page |

| | |
|---|---|
| <u>Exhibit 6</u> | Disability Certification from Frederick Conforti, M.D. dated September 4, 2002<br>(Exhibit four of Susanne Bergendahl deposition – 1 page) |
| <u>Exhibit 7</u> | Return to work full duties record from Berkshire Occupational Health Program dated September 5, 2002<br>(Exhibit Five of Susanne Bergendahl deposition – 1 page) |
| <u>Exhibit 8</u> | Report of Employee Evaluation/Treatment from Berkshire Occupational Health dated September 5, 2002<br>(Exhibit 6 of Susanne Bergendahl deposition (1 page) |
| <u>Exhibit 9</u> | MeadWestvaco form signed by Susanne Bergendahl on August 1, 2002 and sent to Provident Life and Accident Insurance Company that includes sections for:<br>Claim for Continuing Benefits/Return to Work Notice<br>Attending Physician's Statement, and<br>Employer's Statement |
| <u>Exhibit 10</u> | Medical records of Frederick Conforti, M.D. |
| <u>Exhibit 11</u> | Curriculum vitae of Frederick Conforti, M.D. |
| <u>Exhibit 12</u> | Job Description – Beater Room Engineer – Willow Mill – MeadWestvaco Specialty Paper Division<br>(Exhibit 3 of Christopher Matthews deposition – 9 pages) |
| <u>Exhibit 13</u> | Fairview Hospital Records for June 21, 2002 admission |
| <u>Exhibit 14</u> | Hourly rates of Beater Engineer pay at MeadWestvaco in 2002, 2003, 2004 and 2005 |
| <u>Exhibit 15</u> | MeadWestvaco Employee/Employer manuals and/or handbooks. |
| <u>Exhibit 16</u> | Complaint |

<u>Exhibit 17</u>    T. Mark Herlihy letter to John Carrara, Associate General Counsel MeadWestvaco Corporation, dated March 24, 2003;

<u>Exhibit 18</u>    T. Mark Herlihy letter to Jay Presser, Esq. dated December 22, 2004.

<u>Exhibit 19</u>    T. Mark Herlihy letter to David Reinhart, President MeadWestvaco Corporation, dated January 21, 2003.

Defendant's Exhibits:

| | |
|---|---|
| <u>Exhibit A</u> | Investigative Reports from Poma-Wheeler Investigations |
| <u>Exhibit B</u> | Surveillance Photographs from Poma-Wheeler Investigations |
| <u>Exhibit C</u> | Surveillance Video from Poma-Wheeler Investigations |
| <u>Exhibit D</u> | Newspaper Photograph from the Berkshire Eagle, July 2002 |
| <u>Exhibit E</u> | MeadWestvaco Medical Policy, 500A20 |
| <u>Exhibit F</u> | Barring stipulations, tax and other related documents showing earnings and interim earnings of Plaintiff from 2002-2004 |

The parties' position on the admissibility of numerous documents is intertwined with the pending Motions in Limine. The parties will be prepared to address the issue with the court at the pre-trial and anticipate that once the court's rulings on the motions are known, they will be able to quickly designate which exhibits are and are not contested.

While the Defendant believes that communications regarding the unconditional offer of reinstatement will be addressed by the court and that neither it, nor Plaintiff's Exhibit 18 should be presented to the jury, based on the court's rulings on the Motion in Limine, Defendant reserves its right to introduce Exhibits 2 and 3 of its Motion in Limine, relating to the unconditional offer to return to work.

The Defendant reserves its right to add to this list to the extent permitted by the rules or the court, to produce documents in response to testimony, or background documents if necessary to either refresh a witness's memory or

disprove a claim that the witness' testimony is a fabrication. Plaintiff reserves the same rights.

XII.  Proposed Jury Instructions, Special Verdict form or Special Interrogatories

The plaintiff is unclear as to whether the Court wants boiler-plate Jury Instructions or more limited Jury Instructions on certain specific issues in the case and proposes filing under separate cover at a later date prior to trial.

Defendant has filed its documents under separate cover, reserving the right to supplement to the extent allowed.

| Respectfully Submitted, | Respectfully Submitted, |
|---|---|
| /s/ T. Mark Herlihy, Esq. | /s/ Jay M. Presser, Esq. |
| T. Mark Herlihy, Esq. | Jay M. Presser, Esq. |
| BBO #231530 | BBO #405760 |
| Counsel for Plaintiff | /s/ Amy B. Royal, Esq. |
| Herlihy, Thursby & Herlihy, LLP | Amy B. Royal, Esq. |
| 133 Federal Street | BBO #647175 |
| Boston, Massachusetts  02110 | Skoler, Abbott & Presser, P.C. |
| Tel. (617) 426-6100/Fax (617) 482-0288 | One Monarch Place, Suite 2000 |
|  | Springfield, Massachusetts  01144 |
| Dated:  March 11, 2005 | Tel. (413) 737-4753/Fax (413) 787-1941 |
|  | Dated:  March 11, 2005 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Joint Pretrial Memorandum* was filed electronically and served upon attorney of record for each other party via electronic mail, on March 11, 2005.

       /s/ Jay M. Presser
       Jay M. Presser, Esq.

Joint pre-trial memo 03-11-05.doc

20