UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SPRINGFIELD DIVISION     CIVIL ACTION NO. 03-30310-KPN

STEVEN A. HALL,
    Plaintiff

v.

MEADWESTVACO CORPORATION,
    Defendant

**PLAINTIFF, STEVEN A. HALL'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO PRECLUDE THE DEFENDANT FROM INTRODUCING ANY TESTIMONY AND/OR EVIDENCE DISPUTING PLAINTIFF'S PHYSICIAN'S MEDICAL CERTIFICATION THAT HE WAS UNABLE TO PERFORM THE FUNCTIONS OF HIS POSITION FROM JUNE 2002 THROUGH SEPTEMBER 9, 2002.**

The plaintiff in the above encaptioned matter hereby submits the following in further support of his motion in limine to preclude the defendant from introducing any evidence to the effect that Steven Hall did not have a serious health condition that rendered him unable to perform the functions of his position from June 25, 2002 through and including September 9, 2002.

Based upon the defendant's submissions to the Joint Pretrial Memorandum, the defendant does not dispute that the plaintiff had a serious medical condition that duly qualified him for FMLA leave between June 25, 2002 and September 9, 2002. See JOINT PRETRIAL MEMORANDUM, part III, STIPULATION OF UNCONTESTED FACTS. Since this issue has been stipulated to, the plaintiff's Motion, requesting that the defendant be precluded from contesting his FMLA medical certification that he was unable to perform the functions of his position, should be allowed, as any evidence contradicting this

stipulated fact would be irrelevant, prejudicial, and a waste of judicial resources.

It is anticipated that the defendant will argue that the specific evidence sought to be precluded by plaintiff's Motion should nonetheless be admitted as relevant to defendant's affirmative defense that because the plaintiff was not 'totally disabled' his receipt of disability benefits under the defendant's own medical policy while on FMLA leave was fraudulent. The defendant's argument must fail on both factual and legal grounds.

Initially, the defendant has produced no evidence to establish that the defendant HAD a company policy that only allowed paid leave upon proof of 'total disability,' nor is there any evidence of what would constitute total disability under such a policy if one existed. Although this is a factual issue, on the evidence that has been produced and identified as potential exhibits, see JOINT PRETRIAL MEMORANDUM, the defendant will be unable to produce sufficient evidence to justify submitting this issue to the jury.

Second, even if such a policy existed, whether the plaintiff's medical condition qualified as disabled under the policy so as to entitle him to benefits thereunder is a medical issue. In order to dispute a medical issue, the defendant is required to proffer medical evidence. See e.g. Fed. R. Evid. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert may testify thereto …"). No such evidence has been identified in this case. See JOINT PRETRIAL MEMORANDUM.

The FMLA does not permit an employer to substitute its own evaluation of an employee's medical condition for that of the employee's physician. See Albert v. Runyon, 6 F.Supp. 2d 57, 64 (D.Mass. 1998)("FMLA does not authorize an employer to make an independent assessment of the employee's medical condition"). The defendant has absolutely no medically relevant evidence that the plaintiff was not entitled to paid leave during the times claimed. The specific evidence the plaintiff seeks to preclude in limine [1] is not medical evidence and is insufficient to contest plaintiff's disability in the face of the undisputed medical evidence. It is therefore irrelevant and should precluded.

The defendant may argue, as it did in the JOINT PRETRIAL MEMORANDUM, that it was entitled to fire the plaintiff without any actual proof of wrongdoing as long as it had an 'honest suspicion' that the plaintiff was receiving disability benefits dishonestly, based upon law peculiar to the Seventh Circuit. See Kariotis v. Navistar Inter'l Transport Corp. 131 F3d 672 (7th Cir. 1997). This argument, however, has been rejected by other courts as at odds with the remedial purposes of employment discrimination statutes. Smith v. Chrysler Corp., 155 F.3d 799, 806 (6th Cir. 1998)("To the extent the Seventh Circuit's application of the 'honest belief' rule credits an employer's belief without requiring that it be reasonably based on

---

[1]. Any conversations of the plaintiff during his FMLA leave in which he expressed any concerns about the potential financial hardship of returning to work part-time; and
2. Any surveillance conducted on the plaintiff during his FMLA leave.

3

particularized facts rather than on ignorance and mythology, we reject its approach.") The Smith court went on to hold:

> Although courts should resist attempting to micro-manage the process used by employers in making their employment decisions, neither should they blindly assume that an employer's description of its reasons is honest. When the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making it decisional process "unworthy of credence," then any reliance placed by the employer in such a process cannot be said to be honestly held.

Id., at 807-808. It appears likely that the First Circuit would agree with the Sixth Circuit. See Wynne v. Tufts University School of Medicine, 932 F.2d 19, 27 (1st Cir. 1991)(a determination under the ADA that there is no reasonable way to accommodate a student's disability must proven to be based upon "a reasoned, professional academic judgment, not a mere ipse dixit.") Since the defendant cannot prove it made a reasonable, informed and considered decision before firing the plaintiff, his termination was unlawful.

When all the facts, which are basically undisputed, are examined, the conclusion is inescapable that the defendant fired the plaintiff because he availed himself of his right to take leave from work due to a serious medical condition, i.e. for taking leave pursuant to FMLA. MeadWestvaco did not like the fact that employees do not have to be bedridden or completely incapacitated to be entitled to BOTH 12 weeks leave AND job security under FMLA. See Hodgens v. General Dynamics Corp., 144 F.3d 151, 164 (1st Cir. 1998)("The [district] court apparently read the statute to require Hodgens to be actually

4

incapacitated, in the sense of medically too sick to work, for any absence that was to be protected by the FMLA. We disagree. The statutory language--"unable to perform" his job--in [the FMLA] does not necessarily mean that an employee's physical condition itself 'actually incapacitate[s]' him and prevents him from working."). See Santos v. Shields Health Group, 996 F.Supp. 87, 92 (D.Mass. 1998)("leave under the [FML]Act does not mean that the employee must be so incapacitated that the employee is unable to work at all …"). See also 29 C.F.R. § 825.114 (FMLA provides for leave during periods of incapacity defined as the inability to work due to the serious health condition, treatment thereof, or recovery therefrom)(emphasis added.)

MeadWestvaco was concerned that the plaintiff was seen in late August 2002, out and about, walking and driving, going to the post office and engaging in his other usual activities including volunteer positions, at the same time his physician was certifying that he still was unable to work at his job. Since, in his superiors' lay opinion, if he could do these activities, he could do his job, they concluded he was not sufficiently disabled to be out of work. Initially acting consistent with the FMLA provisions, the defendant requested the plaintiff's physician clear him to work part time. The plaintiff's doctor however did not agree with MeadWestvaco's assessment of the plaintiff's disability status and continued to assess him as unable to return to work at MeadWestvaco until September 9, 2002. Rather than avail itself of the procedures provided by the Act to obtain a second

medical opinion, MeadWestvaco simply fired the plaintiff based upon its own assessment of his disability.

What MeadWestvaco did to the plaintiff was precisely what FMLA was passed to prevent - someone losing their job as a result of sustaining and recuperating from a serious medical injury that temporarily makes them incapable of working. See 29 U.S.C. § 2601 ("The Congress finds that … there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods"). "The FMLA makes it the health care providers' responsibility, rather than the employer's, to evaluate an employee's health condition to determine if [the employee] is sufficiently recovered to return to work." Albert v. Runyon, 6 F.Supp. 2d at 69 (D. Mass. 1998); 29 U.S.C. § 2614(a)(4); 29 C.F.R. 825.310. If evidence of an employer's own non-medical assessment of whether an employee is sufficiently recovered from a serious medical condition to be able to safely perform his or her job functions can be substituted for the duly submitted certifications of the employee's physician, the FMLA guarantee of 12 weeks leave will be completely eviscerated.

WHEREFORE, the plaintiff respectfully renews his request that this Court, in limine, issue an order precluding the defendant and/or its attorneys from arguing and/or introducing any evidence or making any remark, statement, argument, question, answer, direct or indirect communication and/or inference which might lead the jury to believe or infer to the jury either directly or indirectly, that Steven Hall did not have a serious health condition that rendered him unable to

perform the functions of his position from June 25, 2002 through and including September 9, 2002.

The Plaintiff,
By his attorneys,

_____
T. Mark Herlihy (BBO #231530)
Karen M. Thursby (BBO #497570)
HERLIHY, THURSBY, & HERLIHY, LLP
133 Federal Street
Boston, Massachusetts 02110
(617) 426-6100